UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAMIAN A. WILK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Case No. 07-1257 (RJL) |
| DISTRICT OF COLUMBIA, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION
(August 6, 2010) [#17]

Plaintiff, Damian A. Wilk ("plaintiff" or "Wilk"), brings this action against the District of Columbia ("defendant") alleging that it discriminated against him on the basis of race during the course of his employment with the District of Columbia Fire and Emergency Medical Services Department ("DCFEMS"). Specifically, plaintiff alleges that DCFEMS violated 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§ 2000e, when it demoted him to Battalion Fire Chief from Acting Deputy Fire Chief in April 2005. Before the Court is defendant's Motion for Summary Judgment. After careful consideration of the parties' pleadings, the relevant law, and the entire record herein, the defendant's motion is GRANTED.

## BACKGROUND

Plaintiff, a caucasian male, was a long-time employee of DCFEMS.[1] Compl. ¶7. On January 15, 2004, he applied to be promoted from a Battalion Fire Chief to Deputy Fire Chief within the Training Division. Def.'s Mot. for Summ. J. ("Def. Mot.") Ex. 1. On March 30, 2004, plaintiff was selected from 20-30 individuals and promoted to the position in an acting capacity, effective April 4, 2004. Def. Mot. Ex. 2. His tenure during the following months, however, was a stormy one.

When he was promoted to Acting Deputy Fire Chief, plaintiff's direct supervisor became Assistant Fire Chief Kenneth Ellerbe ("Chief Ellerbe"), who is African-American. Def.'s Stmt of Facts ("Def. Stmt") ¶5; Pl.'s Opp'n, Ex. I, Wilk Aff. ¶5; Pl.'s Opp'n ¶3. The record clearly demonstrates that the two disagreed on a number of issues affecting the Training Division, including plaintiff's management, planning, and directives. For example, on July 13, 2004, plaintiff placed an African-American sergeant under his command on administrative leave and cited him with violating the District's Personnel Manual for insubordination and threatening conduct towards a caucasian lieutenant. Wilk Aff. ¶8(g). Chief Ellerbe, however, told the plaintiff that he should either charge both the lieutenant and the sergeant, or charge neither of them, and that it was important not to appear to give disparate treatment. *Id.* ¶8(h). When he refused to discipline the lieutenant, Chief Ellerbe sought to discipline the plaintiff.[2] Def. Stmt. ¶9.

---

[1] Plaintiff retired from DCFEMS during the pendency of this action, on May 24, 2008. Def. Mot. Ex. 13, Wilk Dep. 181:9-10.

[2] The discipline against plaintiff was eventually dismissed. Def. Stmt ¶9

2

Several months later, on September 24, 2004, notwithstanding Chief Ellerbe's order to the contrary, a graduation ceremony was marred by the firefighter graduates wearing a different uniform than the EMS graduates participating in the same ceremony. Wilk Dep. 154:13-158:7. In this situation, plaintiff blamed his subordinate for passing on Chief Ellerbe's directive as to the proper uniform too late for the firefighter graduates to comply with Chief Ellerbe's prescribed attire. Wilk Aff. ¶¶8(j), 8(l).

Shortly thereafter, on October 21, 2004, plaintiff submitted a request to Chief Ellerbe to reschedule a day of EMT class to make up for the Thanksgiving holiday. Def. Mot. Ex. 3. Although Chief Ellerbe never formally denied the request, he did tell the plaintiff that doing so made it "look like the planning and foresight was poor." *Id.* He requested that in the future, plaintiff "do some better planning before seeking approval." *Id.* On a separate occasion, plaintiff had to request a one-month delay for the graduating Recruit Class 338. Def. Mot. Ex. 7. In that case, while acknowledging that other finish dates were delayed during his tenure, plaintiff once again blamed a subordinate, the department's Medical Director, for the problem. *Id.*

Finally, on October 29, 2004, Chief Ellerbe recommended to the Fire Chief that plaintiff not continue as Acting Deputy Fire Chief. Def. Stmt ¶15; Def. Mot. Ex. 6. Though he highlighted some of plaintiff's skills in the position, he criticized several aspects of plaintiff's performance. In particular, he wrote that "there appears to be a reluctance on [plaintiff's] part to accept directives and see them through to fruition," and that plaintiff failed to "confront[] adversity or unpopular decisions head on." *Id.* Noting that "there ha[d] been repeated rescheduling of projected class start and finish dates

during [plaintiff's] tenure," Chief Ellerbe also stated that plaintiff lacked "the initiative one would expect from an executive level manager, especially as that expectation relates to working with minimal supervision," and that "his professionalism has been less than expected particularly in two cases." *Id.* On November 5, 2004, the Fire Chief ordered that plaintiff be re-evaluated within 180 days. Def. Stmt ¶16. Plaintiff addressed some, but not all, of Chief Ellerbe's concerns in a memorandum to the Fire Chief on November 12, 2004, listing his achievements in advancing the training program. Def. Stmt ¶¶17-18; Def. Mot. Ex. 7.

On November 16, 2004, Chief Ellerbe submitted a Final Endorsement supporting his original recommendation that plaintiff not continue as Acting Deputy Training Chief. Def. Stmt ¶19; Def. Mot. Ex. 8. On March 11, 2005, Chief Ellerbe verbally informed plaintiff of his demotion, and two days later plaintiff filed a report with the Fire Chief again contesting Chief Ellerbe's characterizations of his performance. Def. Mot. Ex. 11. On April 7, 2005, plaintiff was officially notified of his demotion back to Battalion Fire Chief. Pl.'s Opp'n, Ex. II, Pl.'s Disc. Resps. 27. The demotion took effect April 17, 2005. *Id.*; Compl. ¶8. This lawsuit was filed on July 13, 2007.

## ANALYSIS

Summary judgment is proper where the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing same). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. A party

4

opposing a motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56 (e). Though the Court must draw all justifiable inferences in favor of the non-moving party in deciding whether there is a disputed issue of material fact, "[t]he mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

Plaintiff alleges violations of Section 1981 and Title VII, which both prohibit discrimination on the basis of race. Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981.[3] Title VII makes it unlawful for an employer to "fail or refuse to hire or to

---

[3] Though defendant argues that Section 1981 does not apply to plaintiff because his employment arises from public appointment rather than a contractual relationship (Def. Mot. 8), our Circuit has held that "members of the District of Columbia Fire Department are the counterparts of employees of state and local governmental units, rather than federal employees. . . . and they retain an independent right of action under section 1981." *Torre v. Barry*, 661 F.2d 1371, 1374-75 (D.C. Cir. 1981). Moreover, this Court has also found that "even if District of Columbia law provides that [plaintiff]'s public employment is generally held by statute instead of by contract, the federal interest for § 1981 claims predominates in this situation since [t]he right to dispose of one's labor freely by contract is at the heart of the protections afforded by § 1981." *Kennedy v. District of Columbia*, 519 F. Supp. 2d 50, 60 (D.D.C. 2007) (internal citations omitted)

5

discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Id.* § 2000e-2(a)(1).

Until recently, under either Section 1981 or Title VII, in the absence of direct evidence of discrimination, a plaintiff could indirectly prove discrimination under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004). However, our Circuit has since simplified the district court's inquiry. *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008). Under the new approach, if an employee has suffered an adverse employment action and the employer asserts a legitimate, non-discriminatory reason for the action, the Court need only determine whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin[.]" *Id.* at 494.

There is no doubt that plaintiff's demotion to Battalion Fire Chief from Acting Deputy Fire Chief constitutes an adverse employment action. The defendant, however, has provided a legitimate, non-discriminatory reason for this demotion: plaintiff's performance as Acting Deputy Fire Chief was unsatisfactory, and his skills and abilities seemed better suited to his previous position as Battalion Fire Chief. Def. Mot. 19.

---

(applying Section 1981 to District of Columbia employees serving by public appointment). The Court therefore declines to grant summary judgment on this ground.

6

While plaintiff does not dispute that the events Chief Ellerbe referenced in his evaluation and recommendation occurred, he emphasizes a string of excuses to defray his blame. *See, e.g.*, Wilk Dep. 141:5-19; 161:2-6. Though these responses by plaintiff may weaken the defendant's stated non-discriminatory justification for demoting him, they do not adequately rebut it, and certainly do not provide a sufficient basis for a reasonable jury to find that they were a pretext for racial discrimination. *See, e.g., Royall v. Nat'l Ass'n of Letter Carriers*, 548 F.3d 137, 145 (D.C. Cir. 2008). How so?

As in *Royall*, Wilk does not dispute some of DCFEMS's reasons that standing *alone* would be sufficient for his demotion. *Id.* at 146. For example, plaintiff does not dispute that there were several class delays and reschedulings at the Training Academy during his tenure. Wilk Dep. 140:21-141:5. Nor does he deny that the firefighter graduates at the September 2004 graduation ceremony wore a uniform that directly violated Chief Ellerbe's orders. *Id.* 159:2-4. Moreover, plaintiff does not proffer testimony of others who approved of plaintiff's performance, or any contradicting positive evaluations.[4] *See, e.g., George v. Leavitt*, 407 F.3d 405, 414 (D.C. Cir. 2005).

Instead, plaintiff merely points to other instances where Chief Ellerbe allegedly favored African-American employees in an attempt to suggest a pattern of racial

---

[4] Defendant, however, has submitted additional testimony supporting its view that plaintiff performed poorly as Acting Deputy Fire Chief. Former Assistant Fire Chief of Operations James Martin ("Chief Martin") submitted an affidavit criticizing plaintiff's performance as Acting Deputy Fire Chief. Def. Mot. Ex. 9. Training Lieutenant Robert Pearson also submitted a report to Chief Thompson in June 2004, decrying the state of the training programs under plaintiff's authority. Def. Mot. Ex. 10. Plaintiff contests the validity of Chief Martin's affidavit. Pl.'s Stmt of Facts ¶2. However, even disregarding Chief Martin's affidavit in its entirety, plaintiff has not proffered evidence sufficient to rebut defendant's non-discriminatory reason for his demotion.

discrimination. *See* Wilk Aff. ¶8(b)-(f). There is nothing, however, to imply that Chief Ellerbe's actions with respect to plaintiff were motivated by race, or that similarly situated white employees were treated any differently. Moreover, plaintiff does not advance any reason to believe that Chief Ellerbe was lying in his recommendation to demote plaintiff. Wilk Dep. 144:9-17. Nor has plaintiff demonstrated that the Fire Chief's decision was based on racial animus as opposed to the reports of plaintiff's poor performance. In short, plaintiff has not offered *any* evidence to suggest that the defendant did not "honestly and reasonably believe[]" that plaintiff's performance as Acting Deputy Fire Chief had been substandard. *Brady*, 520 F.3d at 496. Because his evidence is insufficient for a reasonable jury to find that the defendant's motive in demoting plaintiff was racial discrimination, plaintiff's claim must fail. Sadly, this is yet another example of the Civil Rights Act being used indiscriminately as a weapon to resolve a run of the mill employment dispute. How regrettable!

## CONCLUSION

Accordingly, for the foregoing reasons, the Court GRANTS defendant's Motion for Summary Judgment [#17]. An order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge

8